976 F.2d 739
 22 Envtl. L. Rep. 21,540
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff,
v.
VISTA PAINT CORPORATION, Defendant.
VISTA PAINT CORPORATION, Counterclaimant-Appellant,
v.
UNITED STATES of America, Counterdefendant-Appellee.
VISTA PAINT CORPORATION, Third-Party Plaintiff-Appellant,
v.
ENVIRONMENTAL PROTECTION AGENCY; South Coast Air Quality
Management District; San Diego Air Pollution Control
District; Air Resources Board; Technical Review Group;
Third-Party Defendants-Appellees.
 No. 92-55160.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 19, 1992.
Decided Sept. 24, 1992.
 
 1
 Before TANG and CYNTHIA HOLCOMB HALL, Circuit Judges, and WALKER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Vista Paint Corporation ("Vista") appeals from the district court's summary judgment in favor of the government finding Vista liable for violations of the Clean Air Act ("CAA") and awarding the United States ("USA") civil penalties and attorneys fees. Vista also appeals the dismissal of its counterclaims and third-party complaint against the Environmental Protection Agency ("EPA"), California Air Resources Board ("ARB"), South Coast Air Quality Management District ("SCAQMD"), and San Diego Air Pollution Control District ("SDAPCD").
 
 
 4
 The district court had jurisdiction over the enforcement action pursuant to 42 U.S.C. § 7413(b) and 28 U.S.C. §§ 1331, 1345, and 1355. Jurisdiction over the third-party complaint and counterclaim was disputed. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand this action to the district court.
 
 I.
 
 5
 Vista contends that the district court erred in granting motions striking certain of Vista's affirmative defenses and dismissing Vista's counterclaims and third-party claims for want of subject matter jurisdiction and for failure to state a claim.
 
 
 6
 A. Invalidity claims and defenses.
 
 
 7
 As Vista had ample opportunity to submit comments on the inclusion of the local rules in the California state implementation plan ("SIP") pursuant to section 307(d) of the CAA, and to challenge EPA's approval of the inclusion of those rules in the SIP pursuant to section 307(b)(1) of the CAA, the district court lacked subject matter jurisdiction over the third-party complaint, the counterclaim, and the affirmative defenses dealing with invalidity.
 
 
 8
 B. Estoppel claims and defenses.
 
 
 9
 Assuming that there was jurisdiction over the estoppel claims and defenses, the district court correctly dismissed these claims and defenses for failure to state a claim. Even if the EPA had promised not to exercise its enforcement discretion against those paint manufacturers who ceased sales of non-complying paint by September 1, 1987, and that promise was sufficient to estop EPA, Vista admits that it did not halt the sale of non-complying paint by that date. Accordingly, any "promise" would be inapplicable to Vista and it could not prevail on its estoppel theory as a matter of law.[1] Accordingly, the district court properly dismissed the claims and defenses based on estoppel for failure to state a claim.
 
 II.
 
 10
 Vista also contends that the district court erred in finding that Vista violated the CAA by selling or offering for sale non-complying paint, and by refusing to comply with EPA's information request.
 
 
 11
 A. Paint sale liability.
 
 
 12
 There was no genuine factual dispute precluding summary judgment as to Vista's liability for selling or offering for sale non-complying paint. Vista was manufacturing, selling and offering for sale non-complying coatings in 1985 when the volatile organic compounds ("VOC") limits became effective. In June 1987, Vista told EPA that it was selling non-complying paint in the SCAQMD and the SDAPCD. In his deposition, Vista's President, Eddie Fischer, admitted that Vista had been violating the rules since 1985 and was doing so before and after September 1, 1987. Vista also admitted that these violations in the SDAPCD continued until October 12, 1987.
 
 
 13
 Vista did not raise the issue that the dates of the sales were not proved for Sundays and holidays until after summary judgment had been entered. In his declaration in opposition to summary judgment, Fischer denied that Vista offered for sale thousands of gallons of non-complying paint. However, Fischer expressly testified in his deposition that non-complying paint was offered for sale after September 1, 1987, in San Diego. A party may not recant sworn testimony in order to defeat a summary judgment motion. Juardo v. Eleven-Fifty Corp., 813 F.2d 1406, 1410 (9th Cir.1987). Accordingly, as no issue of fact or law remained, summary judgment as to liability for non-complying paint sales was proper.
 
 
 14
 B. Compliance with information request.
 
 
 15
 There was no genuine factual dispute precluding summary judgment as to Vista's liability for refusing to comply with EPA's information request. EPA's second information request required Vista to establish and maintain certain records and to submit certain reports. Vista's President admitted that the kind of information EPA sought was available when EPA requested it. If Vista had stopped offering for sale and selling non-complying paint by September 1, 1987, it would have been relieved of some of the requirements in this request. However, Vista continued to sell such paint after September 1, 1987. Vista's President understood that the requirements of the second request were waived only if Vista stopped selling non-complying paint by September 1, 1987. Although Vista admittedly continued to sell non-complying paint after September 1, 1987, it never provided the information requested by EPA. Accordingly, the court did not err in granting summary judgment as to liability for Vista's refusal to comply with EPA's information request because no issue of fact or law remained.[2]
 
 III.
 
 16
 Vista also contends that the district court erred in summarily awarding civil penalties. Due to the factual nature of many of the factors the district court was required to consider in determining the civil penalty, summary judgment was improper.
 
 
 17
 Section 113(e)(1) of the Clean Air Act requires that:
 
 
 18
 In determining the amount of any penalty to be assessed under this section ... the Administrator or the court, as appropriate, shall take into consideration (in addition to such other factors as justice may require) the size of the business, the economic impact of the penalty on the business, the violator's full compliance history and good faith efforts to comply, the duration of the violation as established by any credible evidence (including evidence other than the applicable test method), payment by the violator of penalties previously assessed for the same violation, the economic benefit of noncompliance, and the seriousness of the violation.
 
 42 U.S.C. § 7413(e)(1) (1992 Supp).[3]
 
 19
 A. Section 113(e)(1) factors.
 
 1. economic impact/size of business
 
 20
 In opposition to summary judgment, Vista asserted that there was a genuine factual dispute as to the economic impact of the penalty on Vista's business. The court below specifically noted in its findings:
 
 
 21
 Vista is a major manufacturer, distributor and retail seller of paint with its total sales last year exceeding 50 million dollars.... Imposition of the penalty assessed below would amount to approximately six percent of Vista's sales in a single year of operation.
 
 
 22
 In his declaration, Fischer stated that Vista's overall sales for fiscal 1991 were about "$45 million and profits were approximately two million dollars. Since then, sales have been flat but profits have declined." In addition, Fischer declared that "[i]mposition of the fine sought by the government in this case, would result in the destruction of my business and the loss of 400 number of jobs [sic] in the Southern California area." USA contends that Fischer's statements did not give the court any financial information to help the court make its determination. While Vista presented no business records, tax returns, affidavits of accountants to controvert the USA claim that the imposition of the full amount of the penalty would amount to less than eleven percent of Vista's sales in one year, Fischer's declarations raise a genuine issue of material fact. Accordingly, the court erred in granting summary judgment as to this penalty factor.
 
 2. full compliance history
 
 23
 The district court held that despite Vista's history of full compliance, a substantial penalty was warranted. As there was no factual dispute, summary judgment as to this factor was proper.
 
 3. good faith efforts to comply
 
 24
 In opposition to summary judgment, Vista asserted that there was a genuine factual dispute as to its state of mind. A court should be wary of granting summary judgment when good faith is in question. See White v. Roper, 901 F.2d 1501, 1503-06 (9th Cir.1990); Hotel & Restaurant Employees Union v. Rollison, 615 F.2d 788, 793 (9th Cir.1980). In his declaration, Fischer stated that Vista made every attempt to cooperate with the EPA. USA contends that there are no material facts in dispute regarding good faith. However, the mere fact that Vista offered for sale and sold non-complying paint after September 1, 1987, does not establish that Vista acted in bad faith.[4] As there was a genuine issue of material fact, summary judgment was improper as to this factor.
 
 
 25
 In addition, the court erred in summarily finding that Vista acted in bad faith in failing to respond to the information request. In his declaration, Fischer stated that Vista attempted at all times to cooperate with the government's request. Fischer also stated that three Vista employees spent three days trying to compile the requested data. There were contested issues of material fact.[5] Vista's good faith was a question of fact that should not have been decided on summary judgment.
 
 4. duration of violation
 
 26
 The district court correctly ruled that the duration of violation supported a substantial penalty. Vista's argument that any violation occurred only on the day of the deadline, but did not continue thereafter, is meritless. The CAA explicitly provides for penalties for each day that Vista fails to respond to an information request. 42 U.S.C. § 7413(b) (1992 Supp).
 
 5. payment of penalties previously assessed
 
 27
 SDAPCD previously assessed a $500 penalty. Vista argues that the court "appears to have given no weight to SDAPCD's evaluation of the proper penalty." This argument is meritless. The district court was not obligated to accept $500 as the proper penalty. The district court considered the $500 Vista paid to the SDAPCD on a fine originally set at $2,000.
 
 6. economic benefit of noncompliance
 
 28
 The district court found that Vista obtained a "significant economic benefit" that supported a "substantial penalty." While there may have been a factual dispute as to this issue, the district court recognized that "Vista has improperly failed to disclose information which it has or had in its exclusive possession to assess the precise economic benefit to it due to its illegal offer for sale and sale of non-compliant coatings." The court also found that Vista failed to submit admissible evidence to controvert USA's showing of Vista's significant economic benefit. Therefore, summary judgment was proper as to this penalty factor.
 
 7. seriousness of the violation
 
 29
 The court found that the seriousness of the violation supported a substantial penalty. In opposition to summary judgment, Vista asserted that there was a genuine factual dispute as to the effects of its emissions on human health. The only document filed by Vista in opposition to summary judgment was a declaration by Fischer. Vista offered no documentary evidence related to the quantity of paint offered for sale to controvert the government's claims as to the potential health effects of the 13,000 gallons of paint it alleged Vista had offered for sale in San Diego in September 1987. USA contends that its claim was based on Fischer's sworn testimony before the San Diego Hearing Board that he had "13,000 gallons of paint in the San Diego district."
 
 
 30
 In its opposition, Vista represented that it had only sold 34 gallons of paint in September 1987 in the SDAPCD. But, in his supporting declaration, Fischer estimates that Vista sold at least 70 gallons. Fischer's declaration raises a genuine factual dispute as to the number of gallons offered for sale. Therefore, this element of the seriousness factor was not properly disposed of on summary judgment.
 
 
 31
 Vista also argues that any delay or lack of completeness in providing the 1987 sales data had no adverse impact on the public. This argument is meritless. EPA's ability to gather information on potential violations is vital to enforcement of the CAA. It is irrelevant that no ozone was formed from Vista's failure to supply the information. See United States v. Charles George Trucking Co., 823 F.2d 685, 689 (1st Cir.1987) (importance of compliance with information requests).
 
 
 32
 B. Non-statutory factors.
 
 1. governmental delay
 
 33
 In opposition to summary judgment, Vista asserted that there was a genuine factual dispute as to the effect of EPA's inaction on the district's proposed SIP revisions. In General Motors Corp. v. United States, 496 U.S. 530, 541 n. 4 (1990), the Supreme Court found that "the statutory remedies for EPA inaction include ... a request pursuant to § 113(b) ... for reduction or elimination of penalties during any period in which unreasonable agency delay results in prejudice." See also United States v. SCM Corp., 667 F.Supp. 1110, 1128 (D.Md1987) (government delay should neither mitigate against imposition of a substantial penalty nor act to enhance the penalty amount). Vista made such a request at summary judgment.
 
 
 34
 Vista argues that EPA delayed from 1985 to 1987 in notifying the industry that it would attempt to enforce the federally approved, but locally superseded, rules. Vista also argues that the district court failed to properly consider EPA's delay in acting on the proposed SIP revisions and in bringing this action. Vista contends that had the EPA rejected the revisions earlier, it would have made none of the paint sales. The "mere failure by governmental agencies to prosecute ... does not allow a court to reduce a penalty." Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals Inc., 913 F.2d 64, 81 (3rd Cir.1990). EPA is only required to act on revisions of SIPs within a reasonable time, not necessarily within four months. General Motors Corp., 496 U.S. at 536-42. USA contends that the EPA's inaction on the San Diego proposed revision was reasonable as it was submitted less than a month before September 1, 1986. Whether this and the other delays were reasonable was a question of fact that precluded summary judgment as to this factor.
 
 
 35
 2. unusual and perplexing nature of regulation
 
 
 36
 Vista did not bring up this argument until its post-judgment motion. Vista cites only United States v. Louisiana-Pacific Corp., 682 F.Supp. 1122 (D.Colo.1987), to support its argument that its penalty should have been reduced because of the "unusual and perplexing" nature of the regulatory scheme. Whatever the complexity of the underlying legal basis for EPA's actions, Vista's President was told by EPA and the San Diego District that, if it did not stop selling non-complying paint by September 1, enforcement would follow. There was nothing unusual or perplexing in these instructions to Vista.
 
 3. reliance
 
 37
 This argument was brought forth in Vista's post-judgment motion. The district court was not bound by Louisiana-Pacific to consider "justifiable and detrimental reliance." Accordingly, the court did not abuse its discretion in denying the post-judgment motion as to this issue.
 
 IV.
 
 38
 Unfortunately, Vista intertwined the distinct issues addressed on summary judgment with those addressed only in its post-judgment motion.[6] Vista never expressly argued in its opening brief that the district court erred in denying its post-judgment motion. Even in its reply brief, Vista's arguments were, at best, unclear. Vista did not even touch on any of these arguments in its opening brief. Accordingly, we refuse to consider these arguments.
 
 V.
 
 39
 We affirm the district court's decision to grant motions striking certain of Vista's affirmative defenses and dismissing Vista's counterclaims and third-party claims for want of subject matter jurisdiction and for failure to state a claim. We also affirm the district court's summary judgment as to liability, and its denial of Vista's post-judgment motion. However, we reverse the district court's summary judgment as to the civil penalty, and remand to the district court for trial on the penalty issues.
 
 
 40
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 The Honorable Vaughn R. Walker, United States District Court Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Vista also argues that USA is estopped due to "EPA's variance representations." However, Vista did not raise this argument until its post-judgment motion. See infra Section IV
 
 
 [2]
 Vista's argument that the EPA had no authority to require the sales data and that it had sufficient cause to act as it did were only raised in its post-judgment motion. See Section IV
 
 
 [3]
 The 1990 Amendments became effective on November 15, 1990. USA filed its complaint on December 3, 1990. Accordingly, the Amendments apply to this case
 
 
 [4]
 At summary judgment, Vista argued that the issue of state of mind was "relevant to the seriousness of any violation." As good faith is irrelevant as to the seriousness of the violations, the court correctly refused to consider good faith under that factor. Vista did not argue that its state of mind was relevant to its good faith efforts to comply. This error is likely due to the failure of USA to bring its complaint under the 1990 CAA Amendments. As good faith is a factor that the district court was required to consider, summary judgment as to this issue was not proper
 
 
 [5]
 Vista's contention that EPA's "promise" that any deficiencies in Vista's responses would excite "immediate" action, and its settlement letter that told Vista that EPA had "enough information to make a settlement offer," led Vista to believe that it had satisfied the information request, was not raised until the post-judgment motion
 
 
 [6]
 After thorough review of the district court record, we conclude that the following issues were raised for the first time in Vista's post-judgment motion: Vista's liability for pre-notice of violation sales, the burden of proof regarding the dates of any sales, abuse of prosecutorial discretion, USA's failure to follow EPA's penalty policy, constitutional excessiveness, EPA's authority to require the sales data, and Vista's sufficient cause to act