Filed 4/19/22; Certified for Publication 5/12/22 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| VICKI HEBERT, Plaintiff and Appellant, v. BARNES & NOBLE, INC., Defendant and Respondent. | D079038 (Super. Ct. No. 37-2019-00007178-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge. Reversed and remanded.

Peter R. Dion-Kindem; The Blanchard Law Group and Lonnie C. Blanchard, III for Plaintiff and Appellant.

Quinn Emanuel Urquhart & Sullivan, Shon Morgan, Daniel C. Posner, and John W. Baumann for Defendant and Respondent.

I

INTRODUCTION

Vicki Hebert filed a putative class action against Barnes & Noble, Inc. (Barnes & Noble), alleging it willfully violated the Fair Credit Reporting Act

(15 U.S.C. § 1681 et seq.; hereafter, the FCRA, or the Act). The FCRA requires an employer like Barnes & Noble to provide a job applicant like Hebert with a standalone disclosure stating that the employer may obtain the applicant's consumer report when making a hiring decision. (15 U.S.C. §§ 1681a(h), 1681b(b)(1)(A).) According to Hebert, Barnes & Noble willfully violated the FCRA by providing job applicants with a disclosure that included extraneous language unrelated to the topic of consumer reports.

Barnes & Noble filed a motion for summary judgment arguing that no reasonable jury could find its alleged FCRA violation was willful. It asserted it included the extraneous information in its disclosure due to an inadvertent drafting error. The trial court agreed with Barnes & Noble, granted the company's motion for summary judgment, and entered judgment in the company's favor.

Unlike the trial court, we conclude a reasonable jury could find that Barnes & Noble's alleged FCRA violation was willful. Based on the evidence presented in the proceedings below, a reasonable jury could find that Barnes & Noble acted willfully because it violated an unambiguous provision of the FCRA, at least one of the company's employees was aware of the extraneous information in the disclosure before the disclosure was displayed to job applicants, the company may not have adequately trained its employees on FCRA compliance, and/or the company may not have had a monitoring system in place to ensure its disclosure complied with the FCRA.

Because a reasonable jury could find that Barnes & Noble's alleged FCRA violation was willful, we reverse the judgment and remand the matter with directions that the trial court vacate its order granting the motion for summary judgment and enter a new order denying the motion for summary judgment.

II

BACKGROUND

A

*Fair Credit Reporting Act*

"In 1970, Congress passed and President Nixon signed the Fair Credit Reporting Act. 84 Stat. 1127, as amended, 15 U.S.C. § 1681 et seq.  The Act seeks to promote 'fair and accurate credit reporting' and to protect consumer privacy."  (*TransUnion LLC v. Ramirez* (2021) 141 S.Ct. 2190, 2200; see also 15 U.S.C. § 1681(b) ["It is the purpose of this title ... to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title ...."].)  To that end, "[t]he Act 'imposes a host of requirements concerning the creation and use of consumer reports.' "[1]  (*TransUnion*, at p. 2200.)

Two of these requirements are codified in 15 U.S.C. section 1681b(b)(2)(A).  That statutory provision requires an "employer who obtains a consumer report about a job applicant first [to] provide the applicant with a standalone, clear and conspicuous disclosure of its intention to do so, and [to]

---

[1]     The Act defines "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for– [¶] (A) credit or insurance to be used primarily for personal, family, or household purposes; [¶] (B) employment purposes; or [¶] (C) any other purpose authorized under ... [15 U.S.C. section 1681b]."  (15 U.S.C. § 1681(d).)

3

obtain the applicant's consent…." (*Walker v. Fred Meyer, Inc.* (9th Cir. 2020) 953 F.3d 1082, 1086.) These disclosure and consent requirements are intended to "secur[e] job applicants' privacy rights by enabling them to withhold authorization to obtain their consumer reports," while also "promot[ing] error correction by providing applicants with an opportunity to warn a prospective employer of errors in the report before the employer decides against hiring the applicant on the basis of information contained in the report." (*Syed v. M-I, LLC* (9th Cir. 2017) 853 F.3d 492, 497 (*Syed*).)

The disclosure and authorization requirements state in part as follows:

**Disclosure to Consumer**

[¶] … [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless–

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

(15 U.S.C. § 1681b(b)(2)(A).)

"The FCRA provides a private right of action against those who violate its statutory requirements in procuring and using consumer reports. The affected consumer is entitled to actual damages for a *negligent* violation." (*Syed, supra*, 853 F.3d at p. 497, citing 15 U.S.C. § 1681*o*, italics added.) "For a *willful* violation, however, a consumer may recover statutory damages ranging from $100 to $1,000, punitive damages, and attorney's fees and costs." (*Syed*, at p. 497, citing 15 U.S.C. § 1681n, italics added.)

4

Willful violations encompass both knowing statutory violations and reckless ones.  (*Safeco Ins. Co. of Am. v. Burr* (2007) 551 U.S. 47, 56–60 (*Safeco*).)  For purposes of the FCRA, the recklessness standard is the same as the common law recklessness standard from the civil liability sphere: recklessness involves " 'action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.' " (*Id.* at pp. 68, 69.)  Stated differently, a violation of the FCRA is reckless when the defendant runs "a risk of violating the law substantially greater than the risk associated with a … merely careless" statutory violation.  (*Id.* at p. 69.)

B

*Hebert's Job Application Process*

In 2018, Hebert applied to work for Barnes & Noble.  During the application process, Barnes & Noble's consumer reporting agency, First Advantage, emailed Hebert a link to a website that displayed Barnes & Noble's consumer report disclosure and requested her authorization to procure a consumer report.  Hebert clicked the link, viewed the disclosure, and authorized Barnes & Noble to procure her consumer report.

Barnes & Noble's consumer report disclosure read as follows:

"[IMPORTANT -- PLEASE READ CAREFULLY BEFORE SIGNING AUTHORIZATION] DISCLOSURE REGARDING BACKGROUND INVESTIGATION

"Barnes & Noble, Inc. ('the Company') may obtain information about you for employment purposes from a third party consumer reporting agency such as First Advantage Background Services Corp. ('First Advantage'), P.O. Box 105292, Atlanta GA 30348, 1-800-845-6004.  Thus, you may be the subject of a 'consumer report' and/or an 'investigate consumer report' which may include information about your character, general reputation, personal characteristics, and/or mode of living, and which can involve personal interviews with sources such as your neighbors, friends, or associates.  You have the right, upon written request made

5

within a reasonable time after receipt of this notice, to request disclosure of the nature and scope of any investigative consumer report. The scope of this notice and authorization is continuing allowing the Company to obtain consumer reports and investigative consumer reports now and throughout the course of your employment to the extent permitted by law.

**"Please note: Nothing contained herein should be construed as legal advice or guidance. Employers should consult their own counsel about their compliance responsibilities under the FCRA and applicable state law. First Advantage expressly disclaims any warranties or responsibility or damages associated with or arising out of information provided herein."**

 (Bolding added.)

The final paragraph of the disclosure (the bolded paragraph beginning with "Please note") includes the extraneous information giving rise to the alleged FCRA violation at issue here.

## C

### *Hebert's Lawsuit*

In 2019, Hebert sued Barnes & Noble on behalf of a putative class of individuals as to whom the company had procured or caused to procure a consumer report in the preceding five years. The operative complaint asserted a single cause of action for willful violation of the FCRA's standalone disclosure requirement. It alleged the company willfully violated this requirement because its consumer report disclosure contained extraneous information unrelated to the procurement of a consumer report. It sought statutory damages, punitive damages, and attorney's fees and costs.

### i

### *Barnes & Noble's Motion for Summary Judgment*

Barnes & Noble moved for summary judgment. It asserted it was entitled to judgment as a matter of law because Hebert could not establish

6

one of the elements of her cause of action—namely, that Barnes & Noble's violation of the standalone disclosure requirement was willful. Barnes & Noble argued the extraneous language in the disclosure was the result of an inadvertent drafting error that occurred while Barnes & Noble was revising the disclosure to ensure it complied with the FCRA. Additionally, Barnes & Noble argued it reasonably and in good faith relied on the advice of outside legal counsel when it included the extraneous language in its disclosure, thus precluding a finding of willfulness.[2]

Together with its motion for summary judgment, Barnes & Noble filed declarations and/or deposition testimony from the following individuals: (1) Allison Spivak, Director of Legal Affairs–Human Resources for Barnes & Noble; (2) Kevin Vilke, Director of Employee Relations for Barnes & Noble; (3) Ryan Cardwell, Manager of Employee Relations for Barnes & Noble; (4) Daniel Jacobs, a principal at Jackson Lewis P.C. (Jackson Lewis), Barnes & Noble's outside legal counsel; (5) Richard Greenberg, another principal at Jackson Lewis; and (6) Sierra Bazemore, an employee of First Advantage. Collectively, this evidence established the following undisputed facts.

In 2009, Barnes & Noble and First Advantage executed a contract whereby First Advantage agreed to provide Barnes & Noble with background screening services for employment purposes. First Advantage provided Barnes & Noble with a model consumer report disclosure and authorization form that, according to First Advantage, complied with the FCRA and state laws and regulations. First Advantage also agreed to provide Barnes &

---

[2]    Barnes & Noble asserted other arguments in its motion for summary judgment, but it does not raise those arguments on appeal as an alternative basis upon which this court may affirm the judgment.

Noble with an updated model disclosure and authorization form if revisions to laws or regulations necessitated changes to the existing form.

Several years later, Barnes & Noble's in-house counsel Allison Spivak received an email with a legal update concerning the FCRA. She forwarded the legal update and Barnes & Noble's then-existing consumer report disclosure form to Daniel Jacobs of Jackson Lewis, and asked whether he was comfortable with the company's form. He responded he was not comfortable with the form for reasons not pertinent to this litigation. He recommended that Spivak reach out to First Advantage for an updated model disclosure form. Soon after these communications, Spivak went on maternity leave and tasked Barnes & Noble employees Kevin Vilke and Ryan Cardwell with ensuring that the company's disclosure form was updated. Vilke, in turn, delegated this responsibility to his subordinate Cardwell.

At Cardwell's request, First Advantage employee Sierra Bazemore sent her company's latest model disclosure form to Cardwell to reference as a template. First Advantage's model disclosure form included one paragraph of text, which generally informed the consumer that he or she may be the subject of a consumer report and advised the consumer of his or her rights in connection with the procurement of the consumer report. It also included a footnote that stated:

> "**Please note**: Nothing contained herein should be construed as legal advice or guidance. Employers should consult their own counsel about their compliance responsibilities under the FCRA and applicable state law. First Advantage expressly disclaims any warranties or responsibility or damages associated with or arising out of information provided herein."

Bazemore told Cardwell to work with his company's legal team to ensure the model disclosure form met his company's needs. She also told him First Advantage could not advise on the content of his company's disclosure form.

8

Cardwell sent the model disclosure form to Jacobs, who reviewed it and told Cardwell it was "generally fine," subject to certain modifications. Soon after, Jacobs went on paternity leave and asked fellow Jackson Lewis principal Richard Greenberg to provide revisions to the model disclosure form. Greenberg revised the text of the model disclosure form and sent a redlined version of the form to Cardwell and Vilke. However, he did not alter or comment on the footnote in the model disclosure form. He understood the footnote was business-to-business language—not part of the disclosure form that would be displayed to job applicants. Greenberg likened the footnote to a watermark embedded in a draft document undergoing revision.

Cardwell accepted Greenberg's proposed edits to the text of the consumer report disclosure and emailed a clean copy of the revised disclosure form (as well as a revised consumer report authorization form) to Bazemore to "replace [Barnes & Noble's] current disclosure & authorization" forms. The revised disclosure form still included the footnote with the business-to-business language.

Bazemore sent Barnes & Noble's consumer report disclosure form to her company's information technology department to be uploaded onto the First Advantage website. At some point during the upload process, the business-to-business language was moved from the footnote of the disclosure form into the body of the disclosure form.

First Advantage uploaded the new disclosure form—which now included the business-to-business language in the body of the disclosure— onto a staging website that was not viewable to members of the public. It granted Vilke and Cardwell access to the staging website so they could review the disclosure form before it went live. A few weeks after the disclosure form was uploaded to the staging website, it went live and was

displayed to Barnes & Noble's job applicants as part of the company's employment application process.

Approximately two years later, Barnes & Noble switched consumer reporting agencies for reasons unrelated to the present litigation. At that time, it stopped using the consumer report disclosure form with the extraneous business-to-business language.

ii

*Hebert's Opposition to the Motion for Summary Judgment*

Hebert opposed Barnes and Noble's motion for summary judgment. She argued there was, at minimum, a disputed issue of material fact on the element of willfulness. She claimed the issue was disputed for the following reasons: Barnes and Noble "knowingly approved and implemented a revised disclosure form that included … extraneous and confusing language" in violation of the FCRA; Barnes & Noble delegated the task of updating its disclosure form to Cardwell, who—in the words of Vilke—did not "know what the legalities of FCRA" were; Cardwell viewed the disclosure form while it was pending on First Advantage's staging website, yet permitted it to go live notwithstanding the extraneous business-to-business language; Barnes & Noble relied on First Advantage to ensure its disclosure form was correct, even though First Advantage said it could not advise on the content of the disclosure form; and Barnes & Noble allowed the disclosure form to be displayed to job applicants for nearly two years.

Hebert also contended that Barnes & Noble could not rely on an advice-of-counsel defense. She claimed the defense was unavailable because Jackson Lewis never rendered a legal opinion about the extraneous business-to-business language that originated in the footnote of First Advantage's model disclosure form. Alternatively, to the extent Barnes & Noble actually

10

believed that Jackson Lewis had sanctioned the inclusion of the extraneous language in the disclosure form, Hebert argued that such advice would be "patently implausible," and Barnes & Noble's reliance thereon would be reckless.

Together with her opposition, Hebert filed transcript excerpts from the depositions of Spivak, Vilke, Cardwell, Greenberg, and Bazemore, in addition to documents obtained during discovery. Of relevance here, Cardwell testified in his deposition that he reviewed all of the documents that were uploaded to First Advantage's staging website before they went live to the public. Spivak and Vilke testified in their depositions that they did not view the documents that were uploaded to the staging website.

iii

*Barnes & Noble's Reply in Support of the Motion for Summary Judgment*

Barnes & Noble filed a reply in support of its motion for summary judgment. It reiterated its claim that there was no genuine dispute that the extraneous language in its disclosure form was a drafting mistake. Barnes & Noble argued it was not reckless for failing to train its employees on the FCRA, as its employees were "familiar enough with the FCRA to recognize an issue and to engage experienced outside counsel to address it." It argued it was not reckless for using the disclosure form for two years either, since it never received complaints about the form that would have prompted further review. Finally, it argued it could rely on the advice-of-counsel defense, irrespective of whether its outside counsel commented specifically on the business-to-business language in the footnote of the form, because its counsel rendered legal advice about the disclosure form as a whole.

11

iv

*Order Granting the Motion for Summary Judgment*

After a hearing, the trial court granted Barnes & Noble's motion for summary judgment. It reasoned Hebert could not establish the element of willfulness because "the facts here show[ed] nothing more than a mistake." The court noted that "outside counsel assumed the language at issue was business-to-business language but did not communicate that to [Barnes & Noble]," and the Barnes & Noble "employees who were tasked with carrying out the updates relied on the edits made by counsel." The court concluded "the alleged violations resulted from a miscommunication over what amounted to a document stamp or watermark on a vendor-supplied form." Additionally, the court ruled that Barnes & Noble's "good-faith reliance on the advice of counsel negate[d] a showing of willfulness."

After granting the motion for summary judgment, the court entered judgment for Barnes & Noble. Hebert appeals.

III

DISCUSSION

A

*Summary Judgment Standards*

"[G]enerally, from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. ... There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) A defendant who moves for summary judgment "bears the burden of persuasion

that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto." (*Ibid*.)

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact …." (*Aguilar, supra*, 25 Cal.4th at p. 850.) Where the plaintiff would bear the burden of proof by a preponderance of the evidence at trial, a defendant moving for summary judgment "must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not—otherwise, *he* [the defendant] would not be entitled to judgment *as a matter of law*, but would have to present *his* evidence to a trier of fact." (*Id*. at p. 851.) If the moving party satisfies the initial burden of production, "he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Id*. at p. 850.) For purposes of the summary judgment law, "[a] prima facie showing is one that is sufficient to support the position of the party in question." (*Id*. at p. 851.)

" 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] " 'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Conroy v. Regents of University of Cal.* (2009) 45 Cal.4th 1244, 1249–1250.)

13

## B

### *There Is a Triable Issue of Material Fact*
### *Whether Barnes & Noble Willfully Violated the FCRA*

Barnes & Noble urges this court to affirm the judgment for the same reason the trial court entered summary judgment in its favor—it claims no reasonable jury could find its alleged FCRA violation was willful. It asserts its alleged violation was not willful, as a matter of law, because it was an "innocent mistake" that resulted "from a miscommunication" among its employees (Cardwell, Vilke, and Spivak), its outside counsel (Jackson Lewis), and its consumer reporting agency (First Advantage).

Courts in the Ninth Circuit " 'have found that "[w]illfullness under the FCRA is generally a question of fact for the jury." ' " (*Snell v. G4S Secure Solutions (USA) Inc.* (E.D. Cal. 2019) 424 F.Supp.3d 892, 902, quoting *Taylor v. First Advantage Background Servs. Corp.* (N.D. Cal. 2016) 207 F.Supp.3d 1095, 1110–1111; see also *Hargrett v. Amazon.com DEDC, LLC* (M.D. Fla. 2017) 235 F.Supp.3d 1320, 1327 ["Willfulness is typically a question of fact for the jury."]; *Wood v. Credit One Bank* (E.D. Va. 2017) 277 F.Supp.3d 821, 846 [" 'Because "summary judgment is 'seldom appropriate' on whether a party possessed a particular state of mind," courts have frequently held that willfulness is a question of fact for the jury.' "].)

For reasons we will explain, this case is no exception to the general rule that willfulness presents a question of fact properly reserved for the jury.

### i

### *There Is Evidence From Which a Reasonable Jury Could Find a*
### *Reckless Violation of the FCRA*

As noted, willfulness under the FCRA includes reckless statutory violations, in addition to knowing statutory violations. (*Safeco, supra*, 551 U.S. at pp. 56–60.) Given that a reckless FCRA violation is a willful FCRA

14

violation, summary judgment would only be warranted in this case if a reasonable jury would be unable to find that Barnes & Noble's alleged FCRA violation was reckless—i.e., if "no reasonable jury could find that [Barnes & Noble's] conduct created a 'risk [of a violation] substantially greater than that which is necessary to make [its] conduct negligent.' " (*Edwards v. Toys 'R' Us* (C.D. Cal. 2007) 527 F.Supp.2d 1197, 1210 (*Edwards*).)  Unlike the trial court, we conclude Hebert adduced sufficient evidence from which a reasonable jury could indeed find that Barnes & Noble's alleged FCRA violation was willful.

In *Syed*, the Ninth Circuit Court of Appeals held that 15 U.S.C. section 1681b(b)(2)(A) clearly and unambiguously prohibits a prospective employer from including terms on a disclosure form in addition to those mandated by the FCRA.  (*Syed, supra*, 853 F.3d at pp. 503–505.)  In light of the unambiguous nature of the statutory prohibition, the *Syed* court concluded "a prospective employer's violation of the FCRA is 'willful' when the employer includes terms in addition to the disclosure …." (*Id.* at p. 496; *id.* at p. 505 fn. 7 ["where a party's action violates an unambiguous statutory requirement, that fact alone may be sufficient to conclude that its violation is reckless, and therefore willful"]; see also *Newsome v. Graybar Elec. Co.* (N.D. Cal. Oct. 18, 2021) 2021 U.S. Dist. Lexis 250198, at *10 ["The Ninth Circuit… has held that a violation of the 'standalone' requirement is willful as a matter of law."]; *Arnold v. DMG Mori USA, Inc.* (N.D. Cal. Mar. 31, 2021) 2021 U.S. Dist. Lexis 62890, at *11 [granting FCRA plaintiffs' motion for summary judgment, reasoning that willfulness inquiry was "straightforward" because defendant's disclosure form included information in addition to the FCRA disclosure].)  In accordance with this persuasive authority, Barnes & Noble's

inclusion of extraneous language on its disclosure form, and its ostensible violation of the FCRA's unambiguous prohibition, is indicative of willfulness.

Further, Hebert adduced evidence from which a jury could find that at least one of Barnes & Noble's employees—Cardwell—was aware the extraneous language would be included in the disclosure form. During his deposition, Cardwell testified he was aware the language was contained in the disclosure form before he sent it to First Advantage. Thereafter, First Advantage loaded the disclosure form onto its staging website and told Cardwell to "check the system and verify that [it was] as expected." In his deposition, Cardwell testified he reviewed all of the documents on First Advantage's system before they went live on its website, per his usual custom and practice. From this evidence, a reasonable jury could find that Barnes & Noble (through Cardwell) knew its disclosure form included the extraneous language that is alleged to violate Title 15 U.S.C. section 1681b(b)(2)(A).

Barnes & Noble does not dispute there is evidence from which a jury could find that Cardwell was aware of the extraneous language before the disclosure went live. However, it contends Cardwell was a "non-lawyer" who "was not versed in (or tasked with knowing) the FCRA's requirements," in an apparent attempt to show the company did not knowingly violate the FCRA's standalone disclosure requirements. Further, it points to statements from Cardwell (made in his declaration and at his deposition) in which he asserted he was only vaguely aware of the FCRA's disclosure requirements, he did not remember the statute's specifics, and he received only "general" training on the FCRA in his capacity as a human resource employee.

Far from helping Barnes & Noble, this evidence tends to establish the existence of a triable issue of material fact concerning willfulness. For instance, a jury could find that Barnes & Noble acted recklessly by delegating

16

all of its FCRA compliance responsibilities to a human resources employee who, by his own admission, knew very little about the FCRA. Similarly, a reasonable jury could find that Barnes & Noble took excessive risks by allowing its final disclosure form to go live without any form of review or oversight from any other employees such as Vilke or Spivak, who testified in deposition that they never viewed the documents that were uploaded to First Advantage's staging website. A reasonable jury could also find that Barnes & Noble was reckless insofar as it failed to provide adequate FCRA training to its employees who bore responsibility for ensuring the company's FCRA compliance, thus resulting in a statutory violation like the one at issue here.

Another factor that could indicate recklessness is Barnes & Noble's continuous use of the allegedly problematic disclosure form for nearly two years. Barnes & Noble argues it did not know, and had no reason to know, that its disclosure form violated the FCRA because it received no complaints from job applicants about its disclosure form while it was in use. Be that as it may, Barnes & Noble's continuous and prolonged use of the disclosure form suggests it had no proactive monitoring system in place to ensure its disclosure was FCRA-compliant. Further, the evidence showed the company stopped using the disclosure form only because it switched consumer reporting agencies—not because it discovered the flaws in its disclosure form. Like the factors discussed above, a finding that Barnes & Noble lacked a routine monitoring system to guarantee FCRA compliance could give rise to a finding of recklessness. (*Edwards, supra*, 527 F.Supp.2d at p. 1214 ["a reasonable jury could conclude that the fact that [defendant] did not discover the violation until suit was filed indicates that its monitoring processes (or lack thereof) created an 'unjustifiable risk' that it would violate the statute"].)

17

*The Advice-of-Counsel Defense Does Not Mandate*
*Entry of Summary Judgment in Favor of Barnes & Noble*

Barnes & Noble contends no reasonable jury could find its alleged violation was willful because it relied in good faith on the advice of counsel when adopting its disclosure form. It argues its reliance on the advice of counsel "negates any showing of willfulness," thus requiring us to affirm the judgment. Barnes & Noble does not direct us to case law approving the use of an advice-of-counsel defense in a FCRA case. However, we assume for purposes of this appeal, without deciding, that a FCRA defendant may invoke the advice-of-counsel defense to try to rebut a showing of willfulness.

Even so, we disagree with Barnes & Noble's assertion that its reliance on the advice of counsel mandates affirmance of the judgment. Certainly, Barnes & Noble's procurement of legal advice regarding its consumer report disclosure is strong evidence that its alleged violation of the FCRA was merely negligent, not willful. However, even in contexts where an advice-of-counsel defense is recognized, a defendant's good faith reliance on the advice of counsel "is not a complete defense, but only one factor for consideration." (*Markowski v. S.E.C.* (2d Cir. 1994) 34 F.3d 99, 105; see also *United States v. Wenger* (10th Cir. 2005) 427 F.3d 840, 853 ["Good faith reliance on counsel… is not a complete defense, but is merely one factor a jury may consider when determining whether a defendant acted willfully."]; but see *Albertson v. Raboff* (1960) 185 Cal.App.2d 372, 386 [advice of counsel "may afford the [client] a complete defense to an action for malicious prosecution"].)

Thus, evidence of Barnes & Noble's asserted reliance on advice of counsel does not singlehandedly preclude a finding of willfulness as a matter of law. Rather, it must be considered with all of the evidence pertinent to the willfulness inquiry–including the evidence that Barnes & Noble may have

violated the FCRA's unambiguous standalone disclosure mandate, the evidence suggesting Cardwell (and hence, Barnes & Noble) may have been aware of the extraneous language yet permitted the disclosure form to be displayed to job applicants anyway, the evidence concerning the company's FCRA training efforts, and the evidence concerning the existence (or non-existence) of a monitoring system designed to ensure FCRA compliance.

Considered collectively, this evidence gives rise to a triable issue of material fact concerning the element of willfulness. Therefore, the trial court erred in granting the motion for summary judgment and entering judgment in favor of Barnes & Noble.

IV

DISPOSITION

The judgment is reversed. The matter is remanded with directions that the trial court vacate its order granting the motion for summary judgment and enter a new order denying the motion for summary judgment. Hebert is entitled to her costs on appeal.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

DO, J.

19

Filed 5/12/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| VICKI HEBERT, | D079038 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2019-00007178-CU-MC-CTL) |
| BARNES & NOBLE, INC., | |
| Defendant and Respondent. | |

THE COURT:

The opinion in this case filed April 19, 2022 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to: All parties